IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EMMANUEL A. APACHITO,

    Plaintiff,

v.          No. CV-13-243 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum* ("Motion"), filed on December 5, 2013, (Doc. 20); *Defendant's Brief in Response to Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing with Supporting Memorandum* ("Response"), filed on February 5, 2014, (Doc. 25); and Plaintiff's *Reply to Defendant's Brief in Response to Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing* ("Reply"), filed on February 18, 2014, (Doc. 26).

On July 9, 2009, Emmanuel A. Apachito filed an application for supplemental social security benefits, alleging disability beginning February 7, 2007. (Administrative Record ("AR") 143–45). His application was denied on October 29, 2009, (AR 77–80), and also upon reconsideration on April 19, 2010, (AR 84–87). Mr. Apachito filed his request for a hearing on August 17, 2010, (AR 88–90); a hearing was held on November 29, 2010 before Administrative Law Judge ("ALJ") Ben Willner (AR 24–56). Mr. Apachito and Mary Diane Weber, an impartial vocational expert, testified at the hearing. (AR 24–56). The ALJ issued his opinion on October 13, 2011, finding that Mr. Apachito was not

disabled under 20 C.F.R. § 416.920(g). (AR 18). Mr. Apachito filed an application for review by the Appeals Council, which was summarily denied, (AR 1–5), making the decision of ALJ Willner the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Apachito complains that ALJ Willner committed reversible, legal error by: (1) failing to properly consider whether Mr. Apachito's impairments met or equaled the listing for mental retardation, (2) making findings unsupported by substantial evidence as to Mr. Apachito's daily activities and past work, and (3) relying on the vocational expert's testimony in error of the law. (Doc. 20).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge failed to properly set forth the reasons why Mr. Apachito did not satisfy the listing for mental retardation, the Court finds that the Motion shall be **GRANTED** and the case **REMANDED** to the Commissioner for further proceedings.

**I. Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d

1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits ("DIB") and supplemental security income ("SSI"), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Apachito initially applied for disability benefits alleging he was afflicted with a learning disability, asthma, and hearing loss. (AR 156). The administrative record includes his medical records, earnings records, work history report, disability application, hearing testimony, examining consultative reports, and non-examining State agency physician evaluations, which were used by the ALJ to evaluate Mr. Apachito's disability

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

claim.

At step one, ALJ Willner determined that Mr. Apachito had not engaged in substantial gainful activity since his alleged onset date of disability. (AR 12). The ALJ proceeded to step two to determine which of Mr. Apachito's impairments were severe.

At step two, the ALJ discussed Mr. Apachito's various intelligence quotient ("IQ") and intellectual diagnostic test results. The first such examination was in 1995, when Mr. Apachito was seven years old. (AR 219–24). The test was conducted in both English and Navajo, although Mr. Apachito was not able to understand most of the verbal instructions given to him in either language. (AR 12). Mr. Apachito was assessed with a nonverbal IQ of 65 on the Leiter International Performance Scale, which was within the "borderline region," and diagnosed as "Educable Mentally Handicapped." (AR 219–24). His Adaptive Behavior Quotient was 65, which was commensurate with the results obtained on the intelligence test. (AR 222). The diagnostician declared Mr. Apachito eligible for disability education and recommended adaptive education services. (AR 224).

In 2004, Mr. Apachito was evaluated at the age of 14 for his continuing need of special education services. (AR 225). The diagnostician administered the Wechsler Intelligence Scale for Children-Third Edition ("WISC-III"), and Mr. Apachito was assessed as having a Performance IQ of 54. (226). Mr. Apachito received a Verbal IQ score of 46, but the diagnostician noted that the score could not be considered a valid indicator because Mr. Apachito was a bilingual/bicultural student. (AR 226). The scores placed Mr. Apachito within the "intellectually deficient" range when compared to others his age. (AR 226). The ALJ noted that Mr. Apachito was diagnosed with mental retardation and speech-language impairment by the school's evaluation team. (AR 13,

5

230).

On April 26, 2006, Mr. Apachito was evaluated again when he was seventeen years old, for the purpose of assessing his eligibility for special education services. (AR 231–37). The ALJ commented that the testing yielded "sub average scores that would be commensurate with eligibility as a student with mental retardation," and revealed significant delays in the areas of reading, math, and written language. (AR 13). The evaluators concluded that Mr. Apachito was still under a disability due to his mental retardation, but recommended that Mr. Apachito cease speech-language therapy because he had made minimal progress in his communication skills over the previous three years, and additional improvement was unlikely. (AR 233, 237). Mr. Apachito subsequently completed a "career pathway" high school diploma in May 2008. (AR 238).

On September 12, 2009, psychologist David LaCourt, Ph.D. examined Mr. Apachito upon the request of the Commissioner. (AR 247–51). Dr. LaCourt stated that he reviewed all of the results of Mr. Apachito's previous IQ tests and school evaluations. (AR 247). He also administered the reading portion of the Wide Range Achievement Test, revision 3 ("WRAT-3") to Mr. Apachito, on which "he obtained a standard score of less than 45 (at about a first grade level of sight word reading skills)." (AR 248). Dr. LaCourt opined that the score reflected functional illiteracy. (AR 248). Dr. LaCourt also administered the Test of Nonverbal Intelligence-Third Edition ("TONI-3") test, on which Mr. Apachito obtained a score of 73. (AR 249). Dr. LaCourt noted that an IQ score of 73 on the TONI-3 indicated that Mr. Apachito is in "percentile rank 4," with a "95% confidence interval 65-81." Dr. LaCourt opined that the score of 73 placed Mr. Apachito within the "[b]orderline range of below average nonverbal-emphasis intellectual

functioning." (AR 249). Dr. LaCourt diagnosed Mr. Apachito as borderline intellectual functioning with a reading disorder.

Dr. LaCourt further opined that Mr. Apachito had marked limitations with understanding and remembering detailed or complex instructions, but had no limitations following simple, short instructions. (AR 13, 249). Dr. LaCourt also found that Mr. Apachito had marked limitations whenever reading was required. He also determined that Mr. Apachito had moderate limitations in the following areas: maintaining concentration, pace, and persistence; attending and concentrating; interacting with coworkers and supervisors; adapting to changes in the workplace; and awareness and ability to react to normal hazards. (AR 247–51). Dr. LaCourt speculated that Mr. Apachito would not be able to manage his disability benefits because he did not demonstrate basic math and reading skills. (AR 247–51).

The ALJ concluded his step-two analysis and found that Mr. Apachito had the severe impairments of borderline intellectual functioning, a learning disability, and asthma. ALJ also determined that Mr. Apachito's hearing loss was non-severe because it was remedied if Mr. Apachito wore a hearing aid. (AR 12).

The ALJ proceeded to step three. First, the ALJ decided that none of Mr. Apachito's impairments, solely or in combination, met or medically equaled one of the listed impairments in 20 CFR §§ 416.920(d), 416.925, and 416.926 (the "Listings"). (AR 16). The ALJ commented that none of the State agency physicians found that Mr. Apachito satisfied any Listing, and stated that he found those opinions to be well-reasoned and supported by the evidence in the record. (AR 15).

ALJ Willner then specifically addressed whether Mr. Apachito's impairments met

or equaled the criteria of the listings for organic mental disorders (§ 12.02) and autistic disorder and other pervasive developmental disorders (§ 12.10).[2] (AR 15–16). The ALJ found that Mr. Apachito did not satisfy the "paragraph B" criteria of §§ 12.02 and 12.10 because he did not have marked restriction in his activities of daily living, social functioning, maintaining concentration, persistence, or pace, or have repeated episodes of decompensation. (AR 15–16). However, he acknowledged that Mr. Apachito had moderate to mild restrictions in those areas, due to his inability to read, write, manage money, drive, and cook, communicate with others, low IQ, and learning disability. (AR 15). The ALJ further held that the "paragraph C" criteria for §§ 12.02 and 12.10 were not satisfied because Mr. Apachito could leave his home without decompensating, and did not require a structured living environment. (AR 16).

After finding that Mr. Apachito's condition did not satisfy any of the Listings, the ALJ formulated Mr. Apachito's RFC. The ALJ concluded that Mr. Apachito had a RFC to perform a full range of work at all exertional levels, as long as Mr. Apachito avoided concentrated exposure to fumes, odors, dust, gases, and poor ventilation, and avoided jobs requiring reading and writing. (AR 16). He also limited Mr. Apachito to work in which he would only have to understand, remember, and carry out simple instructions, make simple decisions, and maintain concentration, pace, and persistence on such tasks for two hours at a time. (AR 16).

In determining Mr. Apachito's RFC, the ALJ stated he had concerns that Mr. Apachito's unemployment was actually due to his failure to seek work, rather than any

---

[2] Section 12 of the Listings is comprised of the nine diagnostic categories for mental disorders. *See* 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00A. Each category under Section 12, except for §§ 12.05 and 12.09, consists of a statement describing the disorder in the listing, known as paragraph A, followed by criteria in paragraphs B and C describing impairment-related functional limitations that are incompatible with the ability to do gainful activity. *See id.*

medical impairment. (AR 17). The ALJ also described some of Mr. Apachito's self-reported daily activities, including cleaning the yard and house, caring for his family's animals, riding horses, loading and unloading hay, working on cars, and participating in recreational activities with family and friends. (AR 17). The ALJ found that Mr. Apachito's daily activities were not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. (AR 17).

The ALJ granted great weight to the opinions of the non-examining State agency physicians. The ALJ did not discuss those opinions, but stated that "[t]he residual functional capacity conclusions reached by these physicians supports a finding of 'not disabled.'" (AR 17).

At step four, ALJ Willner determined that Mr. Apachito had no past relevant work history, and proceeded to step five of the sequential analysis. (AR 17). The ALJ adopted the testimony of the vocational expert that an individual with Mr. Apachito's age, education, work experience, and residual functional capacity would be able to perform the jobs of hand packer, basket filler, and shoe packer. (AR 18). The ALJ found the testimony to be consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), and concluded that Mr. Apachito was capable of performing work that exists in significant numbers in the national economy. Therefore, the ALJ reasoned, Mr. Apachito was not disabled. (AR 18).

**IV. Analysis**

In his Motion, Mr. Apachito alleges ALJ Willner committed several reversible errors. Mr. Apachito contends that: (1) the ALJ erred in finding that his impairment(s) did not meet or equal the listing for mental retardation; (2) the ALJ's findings as to his daily

activities and past work are unsupported by substantial evidence; and (3) the ALJ adopted the vocational expert's testimony in error. (Doc. 20). The Commissioner responds that ALJ Willner properly found that Mr. Apachito did not have an impairment, or combination of impairments, to satisfy the listing criteria for mental retardation. (Doc. 25 at 3–5). The Commissioner further argues that there is sufficient evidence in the record to support the ALJ's conclusions as to Mr. Apachito's work history and daily activities, and that the vocational expert's testimony supports the ALJ's finding that there are jobs existing in significant numbers in the national economy which Mr. Apachito could perform. (Doc. 25 at 6–10).

Mr. Apachito asserts that the ALJ committed legal error by failing to properly discuss and analyze his mental impairments at step three. (Doc. 20 at 12–14). Specifically, Mr. Apachito argues that the ALJ did not provide adequate reasons why Mr. Apachito's impairments did not satisfy the criteria for mental retardation, which is categorized as § 12.05 in the Listings. The Commissioner contends that the ALJ properly discussed the effects of Mr. Apachito's intellectual and learning impairments, and that Mr. Apachito did not meet his burden of proving that his impairments resulted in a limitation that met or equaled the criteria in § 12.05. (Doc. 25 at 3–5).

   A. <u>ALJ's Responsibility to Identify Relevant Impairments Under the Listings</u>

At step three of the sequential evaluation process, the ALJ must determine whether the impairments found to be severe at step two meet or equal a listed impairment; if so then the claimant qualifies for disability benefits. *See Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); 20 C.F.R. § 416.920(a)(4)(iii). If a claimant has more than one impairment, the Commissioner must determine "whether the combination

of [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 416.926(b).

At step three, ALJ Wilner found that Plaintiff's impairments of borderline intellectual functioning, a learning disorder, and asthma did not alone or together meet or medically equal the severity of any of the listed impairments in 20 C.F.R. part 404, subpart P, app.1. (AR 12–16). While the ALJ specifically considered whether Mr. Apachito's impairments met the criteria for an organic mental disorder (§ 12.02) and autistic disorder and other pervasive developmental disorders (§ 12.10), the ALJ did not discuss the listing for mental retardation (§ 12.05) or give any reasons for rejecting its applicability to Mr. Apachito.

Even though a claimant bears the burden of proof at step three, the ALJ must explain why a claimant does or does not meet a listing by making findings supported by specific weighing of the evidence. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996) (explaining that under 42 U.S.C. 405(b)(1) an ALJ is required to discuss the evidence and explain why a claimant is not disabled at step three). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010 (quotations omitted); *see also Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position").

The Commissioner argues that the ALJ did not commit an error, because it was Mr. Apachito's burden to establish that his impairments or combination of impairments met or equaled listing 12.05, which he failed to do. (Doc. 25 at 4). While the claimant has

the burden to present evidence demonstrating that he meets or equals a listing, it is appropriate to place the burden on the ALJ to identify any relevant listings in light of the evidence produced. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 & n.3 (10th Cir. 2005). A claimant trying to show the ALJ did not make the appropriate analysis regarding listing 12.05 must show he can satisfy the basic requirements of that listing. *See Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

Further, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quotations and alterations omitted). "ALJs are not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Wall*, 561 F.3d at 1062 (quotations and alterations omitted). "The standard is one of reasonable good judgment." *Id.* (quotations omitted).

Therefore, the Court must determine whether Mr. Apachito put forth sufficient evidence and argument that he satisfied the basic criteria of § 12.05 of the Listings. If so, then an ALJ using reasonable good judgment should have made findings supported by specific weighing of the evidence why Mr. Apachito did or did not satisfy listing 12.05.

### B. Listing 12.05: Mental Retardation

A claimant arguing that the ALJ failed to make the appropriate analysis for mental retardation under the Listings, must show he can satisfy the basic requirements of § 12.05. *See id.* To meet or equal the criteria of listing 12.05, a claimant must satisfy the requirements of the capsule definition and one of four severity prongs. *See id.* (quotations and alterations omitted).

"To come within the scope of listing 12.05, a claimant must satisfy that listing's capsule definition." *Id.* "The capsule definition for listing 12.05 states: 'Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.'" *Id.* (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05).

Mr. Apachito asserts that he provided evidence that demonstrates he satisfied the capsule definition of listing 12.05. Diagnostic tests taken when Mr. Apachito was age six, 14, and 21, show he had subaverage IQ scores reflecting significant learning delays. The ALJ discussed those scores in step two of his decision, describing them as "sub average" and "in the extremely low range." (AR 13). Mr. Apachito points out that at age 14, his reading, writing, and math levels were at the kindergarten level, he could only write four of the seven letters dictated to him, and his general language skills were those of a third of fourth grade student. (AR 231–35). Mr. Apachito also notes that he was involved in a special education program throughout almost all of his school years because the school evaluators determined that he was mentally retarded and had speech-language impairment.

Mr. Apachito further contends that his condition falls squarely within the severity prongs of both §§ 12.05B and C. In order to meet the criteria for § 12.05B, a claimant must demonstrate a "valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B. To meet the criteria for § 12.05C, a claimant must show "a valid verbal, performance, or full scale IQ of 60 to 70 inclusive and a physical or other mental impairment imposing an additional and significant work-related limitation of

function." *Id.* at § 12.05C. Mr. Apachito points out that in 2003, he was assessed with a performance IQ of 54, and a verbal IQ of 46, and that in 2006 the evaluators agreed that re-testing was not required because the previous IQ scores were still valid. (Doc. 20 at 12–13). Therefore, Mr. Apachito reasons, his scores met the IQ criteria for both §§ 12.05B and 12.05C.

The Commissioner responds that even if Mr. Apachito satisfied the capsule definition criteria for mental retardation, he cannot satisfy the severity prongs of either §§ 12.05B or C. (Doc. 24 at 4). The Commissioner argues that Dr. LaCourt's testing revealed that Plaintiff is in the borderline range of intelligence, with an IQ of 73. She contends that the IQ scores assessed in 2003 are not valid for the disability claim period beginning June 2009, and that the only IQ score the ALJ could consider was the one assessed by Dr. LaCourt in 2009. (Doc. 25 at 5). Therefore, the Commissioner reasons, the ALJ was not required to analyze whether Mr. Apachito is disabled under listing 12.05 because he did not satisfy the baseline IQ requirements of §§ 12.05B or C.

It is true that "[t]he ALJ need not simply accept IQ results reported by an expert." *McKown v. Shalala*, No. 93-7000, 1993 U.S. App. LEXIS 21852, *8 (10th Cir. Aug. 26, 1993) (unpublished). Sections 12.05B and C require a valid IQ score, and "the regulations do not limit the question of validity to test results alone in isolation from other factors." *Id.* (quoting *Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991)). "[T]he ALJ may discount an IQ score as invalid for a variety of reasons, so long as there is substantial evidence in the record to support his conclusion." *Id.*

The Commissioner argues that the ALJ properly rejected the earlier IQ scores because the Listings explicitly provide that an IQ test score is invalid if obtained when a

claimant is between the ages of seven and 16, the IQ score is 40 or above, and the results are more than two years old. *See* 20 C.F.R. pt. 404 subpt. P, app. 1, § 112.00(d)(10). The Commissioner maintains that Mr. Apachito's earlier IQ scores are therefore precluded from consideration by the ALJ because they fall squarely within that provision. The Court has reviewed the Listings and the provision cited by the Commissioner. The provision at issue is contained in Section 112.00, which is the category for mental disorders in children under the age 18. The Commissioner does not point the Court to an analogous rule for analyzing mental disorders in adults under Section 12, and the Court is unable to locate any such rule. Therefore, the Court cannot find that § 112.00(d)(10) on its own provides sufficient justification for rejecting the earlier IQ scores.

      The ALJ did not state whether he rejected any of Mr. Apachito's earlier IQ scores in favor of the one assessed by Dr. LaCourt, because he was entirely silent on the matter. He did not explain whether he had rejected the earlier IQ scores for the reason that they were too old or barred by § 112.00(d)(10). The ALJ described in detail all of the diagnostic results, but never stated whether he relied on one over the other, or if he rejected any as invalid. The Court also notes that to determine whether Mr. Apachito met § 12.05's capsule definition, the ALJ was required to review the earlier IQ scores insofar as they provide evidence that Mr. Apachito did or did not have subaverage general intellectual functioning initially manifested during the developmental period. Therefore the ALJ had to consider the earlier IQ scores and could not have rejected them outright. (Doc. 26 at 1).

      The Court cannot find that substantial evidence supports the Commissioner's

argument that the earlier IQ tests were properly rejected by the ALJ as invalid. The ALJ never stated that was the case. It is improper for the Court to engage in *post hoc* rationalization of the ALJ's decision. *See Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004). Judicial review is limited to the reasons stated in the ALJ's decision, and the Court may not supply possible reasons why the ALJ may have disregarded Mr. Apachito's earlier IQ scores. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004) (per curiam).

Mr. Apachito submitted various IQ test scores and diagnostic results that would support a finding he met the capsule definition and either §§ 12.05B or C. Therefore, the Court finds that Mr. Apachito presented sufficient evidence to demonstrate his impairments may satisfy the basic criteria of the listing for mental retardation. *See Wall*, 561 F.3d at1062. Next, the Court will determine whether Mr. Apachito properly put forward the argument that he is mentally retarded pursuant to the Listings.

### C. Mr. Apachito Preserved the Argument That He Satisfied Listing 12.05

The ALJ may rely on the claimant's attorney to structure and present the claimant's case in a way that the claimant's claims are adequately explored. *See Branum*, 385 F.3d at 1271 (quotations omitted). The record shows that Mr. Apachito's attorney raised the issue of his eligibility for disability benefits pursuant to listing 12.05 on multiple occasions. On October 13, 2010, Mr. Apachito's attorney submitted a record request to the Office of Disability Adjudication and Review asserting the reasons why Mr. Apachito should be deemed disabled under listing 12.05. (AR 98–99). At the hearing before ALJ Willner, Mr. Apachito's attorney used her closing argument to explain the reasons Mr. Apachito satisfied the Listings criteria for mental retardation. (AR 52–54).

His attorney also submitted a brief to the Appeals Council outlining why the ALJ erred by not developing the record sufficiently as to listing 12.05. (AR 138–41).

Therefore, the record demonstrates that Mr. Apachito's attorney adequately raised the issue of mental retardation directly with the ALJ and the Commissioner throughout the pendency of his disability claim.

The ALJ did not explain why he rejected the favorable evidence to support Mr. Apachito's claim he was disabled pursuant to listing 12.05, and the Court must find that ALJ Willner did not exercise reasonable good judgment in remaining silent on the point. The ALJ's bare conclusion that Mr. Apachito did not meet any of the Listings, "is beyond meaningful judicial review"; the Court is unable to assess whether relevant evidence adequately supports the ALJ's conclusion, or whether the correct legal standards were applied in the absence of any ALJ findings supported by specific weighing of the evidence. *See Clifton*, 79 F.3d at 1009.

The ALJ's *Clifton* error would be harmless if findings he made elsewhere in the decision conclusively negated Mr. Apachito's claim that he is mentally retarded under listing 12.05. *See Fischer-Ross*, 431 F.3d at 733. However, the Court does not find that is the case here, and the Commissioner does not argue otherwise. Therefore, the Court concludes that the ALJ erred by failing to make the adequate findings as to whether Mr. Apachito's impairments met or equaled listing 12.05.

### V. Conclusion

The case must be remanded so that the ALJ may set out his specific findings and reasons for accepting and rejecting evidence to support his conclusion that Mr. Apachito's severe impairments did not meet or equal the listing for mental retardation.

The Court does not decide any other issue raised by Mr. Apachito on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum*, (Doc. 20) be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE